UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
   STEVEN BARRERE,                  :
                                            :
                Plaintiff,          :
                                            :   **MEMORANDUM**
       -against-             :   **DECISION AND ORDER**
                                            :
                                            :   18-cv-5854 (BMC)
   COMMISSIONER OF SOCIAL SECURITY,   :
                                            :
                                            :
                Defendant.       :
--------------------------------------------------------- X

**COGAN**, District Judge.

     Plaintiff seeks social security benefits, alleging that he became disabled after a car

accident in 2011 left him with significant behavioral changes and a traumatic brain injury. The

Administrative Law Judge disagreed and found that he was able to perform a full range of work

at all exertional levels, with certain non-exertional limitations,[1] and thus is not disabled as

defined by the Social Security Act, 42 U.S.C. § 401.

     Plaintiff's motion for judgment on the pleadings raises the following arguments: (1) the

ALJ lacked substantial evidence to determine plaintiff could perform work with certain non-

exertional limitations; (2) the ALJ failed to consider the opinion of his treating physician; (3) the

ALJ didn't explicitly address a medical report favorable to plaintiff; (4) the ALJ

"mischaracterized" the opinion of another physician; and (5) the Appeals Council improperly

rejected "new and material" evidence. All of these arguments lack merit, and I therefore grant

---

[1] The ALJ determined that plaintiff was limited to unskilled tasks, in a low stress job, defined as having only occasional decision making and only occasional changes in work setting, with only occasional interaction with the public and coworkers.

defendant's cross-motion for judgment on the pleadings, deny plaintiff's motion, and dismiss the action.

## DISCUSSION

### I.     Substantial Evidence

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, his decision must be affirmed.  The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn."  Castano v. Astrue, 650 F. Supp. 2d 270, 277 (E.D.N.Y. 2009) (citation omitted).

Here, the ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with non-exertional limitations: plaintiff was limited to unskilled tasks, in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting, with only occasional interaction with

the public and coworkers. Contrary to plaintiff's contention, there is a substantial amount of medical and non-medical evidence to support the ALJ's RFC assessment.

First, the ALJ's opinion was supported by Dr. Straussner, a consulting examiner, who reviewed plaintiff's entire medical record. Dr. Straussner noted that a September 2014 neuropsychological evaluation indicated largely intact mental findings and that plaintiff had multiple cognitive strengths. She observed he was attending community college and was able to make it to his appointments on his own and on time. Like the ALJ, she found that the evidence supported the notion that plaintiff could respond to supervision while performing work involving brief or superficial interaction with colleagues and the public.

Second, Dr. Pachilakas, a neuropsychologist, spent eight hours evaluating plaintiff and completed a comprehensive psychometric examination. She noted that plaintiff's attention skills were intact; he exhibited a "superior" working memory; had intact visuospatial skills; and normal cognitive functioning. Furthermore, his neuropsychological findings were largely intact, and she concluded that "his cognition has remained stable over time and is encouraging." This generally promising assessment of plaintiff's cognitive abilities, describing in great detail Dr. Pachilakas' objective findings, further supports the ALJ's assessment that plaintiff did not suffer from severe cognitive limitations preventing him from performing work with non-exertional limitations.

Third, plaintiff was examined by Dr. Shapiro and Dr. Tessler, who both found that plaintiff was alert, oriented, calm, and cooperative during the medical evaluations, while exhibiting a normal mood. Dr. Tessler confirmed that plaintiff didn't "appear to be symptomatic from" his brain injury. Her portrayal of plaintiff's mental health as cautiously optimistic supports the ALJ's RFC assessment.

Fourth, Dr. D'Amico completed a neuropsychological evaluation of plaintiff in January 2016, and her report also supported the ALJ's RFC determination. During his evaluation with Dr. D'Amico, plaintiff described himself as "tough, smart, athletic, and funny." He was oriented to his surroundings. More importantly, after completing a series of neurological examinations, Dr. D'Amico found that his adaptive, conceptual, social and practical skills were all average and recommended that plaintiff continue to "develop a plan to reach his educational and vocational goals." Thus, her opinion that plaintiff make concrete plans to pursue a career is consistent with the ALJ's final determination.

Likewise, the opinion of the ALJ was supported by other objective evidence in the record. On July 2014, plaintiff obtained a perfect score on a Mini-Mental State Examination, demonstrating normal cognition and average intellectual functioning, and his Full-Scale IQ score placed him in the "high average range" of intellectual functioning. Moreover, an MRI of his brain from July 2014 showed "no abnormal enhancement" that would suggest any aggressive process, and a CT span resulted in normal findings in February 2016.

Based on plaintiff's daily activities and accomplishments, the ALJ could also reasonably conclude that he maintained certain cognitive ability to perform work with certain non-exertional limitations. After his car accident, plaintiff obtained a black belt in martial arts in 2016 and was actively pursuing the discipline of Brazilian Jiu-Jitsu, even working as a karate instructor for several hours a week without any negative behavioral incidents. In addition, he demonstrated "above average" academic achievement after his accident: he obtained an 1180 on his college admissions exam ("the SATs"); completed an associate's degree in Criminal Justice with a 3.5 grade point average; passed biology and anatomy college classes; and pursued a physician's assistant program (although he failed due to focusing on collegiate wrestling – not due to any

cognitive or behavioral impairments). This further demonstrates plaintiff did not have a disabling mental condition.

In sum, the record reflects that plaintiff could function in a low stress environment, such as teaching karate since March 2015 or regularly attending college classes – without any negative behavior incidents. If plaintiff's symptoms did not severely limit his ability to obtain a "perfect score" on a medical evaluation, pursue multiple belts in martial arts, or obtain an impressive 3.5 GPA (which all certainly require a level of discipline, memory, and perseverance), then the ALJ could reasonably find that plaintiff maintained the capability to perform work with certain non-exertional limitations.

## II.    Dr. Hertz's Opinion

Plaintiff contends the ALJ erred by not considering the April 2017 opinion of Dr. Hertz. Even though the ALJ did not consider this evidence, the Appeals Council did, issuing a separate decision and finding it was inconsistent with the record evidence and not supported by objective clinical findings. I agree with the Appeals Council and find it did not err in giving little weight to Dr. Hertz's extremely restrictive opinion.

The treating physician rule "mandates that the medical opinion of a [plaintiff's] treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). However, the Commissioner may set aside the opinion of a treating physician that is contradicted by the weight of other evidence in the record. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Here, Dr. Hertz had sporadically treated plaintiff "for short periods" in 2011, 2014, and 2017, and his medical records and notes from plaintiff's treatments are not contained in the

record.  Also, Dr. Hertz rendered his opinion on a check-box form with little narrative, opining in

April 2017 that plaintiff had moderate-to-extreme limitations in his ability to: understand,

remember, or apply information; interact with others; concentrate, persist, or maintain pace; and

adopt or manage oneself.  As to his clinical findings supporting the severity of his opinion, he

wrote that plaintiff was "unable to hold a job."

 The Appeals Council properly determined that Dr. Hertz's form was entitled to limited

weight because his extreme and restrictive assessment was not supported by the medical

evidence or clinical findings in the record, contradicted by other evidence in the record, and he

did not provide a narrative for each of the check-box forms he completed.  See Camille v.

Colvin, 652 F. App'x 25, 27 (2d Cir. 2016).

 Dr. Hertz opined that plaintiff was compliant with his prescribed treatment.  However,

even plaintiff concedes that, though every psychiatrist or psychologist who evaluated him

recommended that he take psychotropic medication, he did not heed their advice.  Dr. D'Amico

explicitly stated psychotropic medication could successfully ameliorate plaintiff's behavioral

issues, but plaintiff nevertheless refused to take this medication.  Plaintiff instead chose to pursue

other non-prescribed treatment.  He told the ALJ that he took sleep medication, which helped his

condition, and he reported having a medical marijuana card; no physician recommended this

course of treatment.

 As to Dr. Hertz's opinion that "alcohol or substance use" did not contribute to plaintiff's

"maladaptive" condition, this assessment is also dubious, suggesting Dr. Hertz was unaware of

plaintiff's full personal and medical history.  There is copious and unrefuted evidence

contradicting this assessment.   Plaintiff's decision to drive while intoxicated and under the

influence of drugs led to the death of his passenger and resulted in plaintiff's traumatic brain

injury in 2011. Dr. Hertz also failed to address that plaintiff was criminally charged for possessing a controlled substance in January 2016, and that he was admitted into the hospital a month later, when he told hospital staff that he struggling with drug abuse. Because Dr. Hertz did not provide an explanation for his opinion, how Dr. Hertz could reconcile this opinion with the foregoing is a mystery.

The very restrictive opinion of Dr. Hertz is also inconsistent with the opinions of multiple physicians who completed extensive and thorough medical evaluations of plaintiff, compared to Dr. Hertz's form . The records from Dr. Pachilakas' evaluation of plaintiff, indicating an intact working memory and normal cognitive functioning, stand in stark contrast to Dr. Hertz's dire assessment that plaintiff would have marked or serious issues "answering questions or providing explanations" or "asking simple questions or requesting assistance."

Contrary to Dr. Hertz's assessment that plaintiff had an "extreme inability" to "initiate or sustain a conversation" and "cooperate and handle conflict with others," Dr. Shapiro and Dr. Tessler both found that plaintiff exhibited the opposite behavior during their medical evaluations. According to them, he was able to describe his personal and medical history in great detail.

Nor is Dr. Hertz's opinion that plaintiff could not set realistic goals consistent with Dr. D'Amico's thorough and generally encouraging report, where she recommended that plaintiff pursue further educational and career aspirations. Thus, Dr. D'Amico did not share Dr. Hertz's bleak assessment of plaintiff's ability to work in the future.

It is also difficult to reconcile the objective evidence contained in the record with Dr. Hertz's restrictive opinion. Plaintiff's ability to obtain a perfect score on a Mini-Mental State Examination, perform well on his IQ exam, and obtain an associate degree with a 3.5 GPA are

inconsistent with Dr. Hertz's opinion that plaintiff had severe mental limitations and would have serious or extreme inability to complete tasks in a timely manner or stay on task.

Lastly, Dr. Hertz's restrictive assessment is contradicted by plaintiff's own testimony and daily activities. Dr. Hertz opined that plaintiff had the "extreme inability to understand and remember short and simple instructions or sequence multi-step activities." However, the evidence in the record of plaintiff's multiple impressive accomplishments paints a very different picture. Indeed, obtaining a black belt in karate, pursuing Brazilian Jiu-Jitsu, and serving as a karate instructor for a significant period of time certainly required plaintiff to remember short and simple instructions. This would suggest, contrary to Dr. Hertz's opinion, that plaintiff could not only follow through on simple instructions, but also set realistic goals and stay on task.

Based on the foregoing, the Appeals Council had good reason to discount Dr. Hertz's opinion because it was contradicted by the weight of other evidence in the record. See Snell v. Apfel, 177 F.3d at 133.

### III.     Dr. Bardey's Opinion

Plaintiff claims the Appeals Council and ALJ both erred by failing to discuss the opinion of Dr. Bardey, a forensic psychiatrist who evaluated plaintiff on a single occasion; he was not a treating source. Dr. Bardey diagnosed plaintiff with "major neurocognitive disorder due to traumatic brain injury, adjustment disorder with disturbance on emotions and conduct [.]"

The ALJ's failure to specifically address Dr. Bardey's forensic report is not fatal to the ALJ's findings. The Second Circuit has held that an "ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013). Moreover, Dr. Bardey's report is not inconsistent with the ALJ's RFC determination. At the time of Dr.

Bardey's evaluation, plaintiff was not taking any psychotropic medications while in jail. Despite this, he was calm, alert, and cooperative and able to articulate, in great accurate detail, his extensive medical and personal history to Dr. Bardey.

Even assuming Dr. Bardey's report is inconsistent with the ALJ's finding, this does not negate the substantial evidence, discussed above, supporting the RFC determination. "As a general matter…we must regard the Secretary's factual determinations as conclusive unless they are unsupported by substantial evidence." See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Because the Commissioner's consideration of this report completed by a provider who saw plaintiff on a single occasion would not have led to a different result, the Commissioner's failure to address it does not require remand. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010).

## IV.    Dr. D'Amico's Opinion

Plaintiff claims the ALJ "mischaracterized" Dr. D'Amico's opinion when the ALJ stated that Dr. D'Amico did not believe plaintiff was disabled, but I disagree. The Commissioner may rely not only on what the record says, but also on what it does not say. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). The medical records indicate that Dr. D'Amico, although recognizing certain non-exertional limitations, maintained a positive assessment of plaintiff's future: she noted he achieved a 1180 on this SATs; pursued a physician's assistant program; obtained a black belt in martial arts; and obtained a "superior" score on the working memory index. More importantly, despite acknowledging his past and present limitations, she recommended that plaintiff continue to "develop a plan to reach his educational and vocational goals." It is the ALJ's province to resolve conflicting evidence and to make a final determination of disability. Veino v. Barnhart, 315 F.3d 578, 588 (2d Cir. 2000).

## V.    New and Material Evidence

Plaintiff's final claim is that the Appeals Council erred in failing to consider new and material evidence he submitted after the ALJ's hearing decision.  Although evidence submitted to the Appeals Council becomes part of the administrative record, see Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996), the Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if: (1) the evidence is material; (2) the evidence relates to the period on or before the ALJ's hearing decision; and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence.  See Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010) (citing 20 C.F.R. § 416.1470); see also Bushey v. Colvin, 552 F. App'x 97, 98 (2d Cir. 2014) (holding the new evidence submitted "did not alter the weigh of the evidence so dramatically as to require the Appeals Council to take the case").

Here, the Appeals Council did consider this new evidence but held that this evidence would not have changed the ALJ's decision.  After the ALJ rendered an unfavorable opinion against him, plaintiff sought a medical evaluation from Dr. Breitman.  According to the medical records, plaintiff went to see Dr. Brietman at the urging of his mother and for the specific purpose of being approved for disability because he could "not hold down a job."  Thus, because Dr. Brietman examined plaintiff after the ALJ's hearing decision, this evidence didn't relate to the relevant time period.

Nor did this new evidence render the ALJ's decision contrary to the weight of the evidence.  Despite Dr. Brietman opining that plaintiff was disabled, she did not provide any functional assessment to support her finding of disability.  To the contrary, Dr. Brietman's objective findings were generally unremarkable: she administered to plaintiff a general

intellectual functioning test, and his score fell within the "high average" range, indicating his intelligence was stronger than same-aged peers; he was attentive on tests of visual attention and scanning and was able to successfully complete a problem-solving task that had ambiguous rules; he had good memory and could estimate answers to unfamiliar questions; and she reported plaintiff was an "intelligent individual with many cognitive strengths."

Dr. Brietman's objective findings were consistent with the ALJ's RFC determination. Her opinion did not "add so much weight to make the ALJ's decision contrary to the weight of the evidence." Rutkowski, 368 F. App'x at 229. Given that other medical providers did not share her medical assessment, the introduction of Dr. Brietman's opinion does not require remand, since "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino, 312 F.3d at 588.

## CONCLUSION

Plaintiff's motion for judgment on the pleading [15] is denied, and the Commissioner's cross-motion for judgment on the pleading [19] is granted. The complaint is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
        January 28, 2020